The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner W. Bain Jones, Jr., and the briefs and arguments on appeal. The appealing party has shown good ground to reconsider the evidence. Having reconsidered the evidence of record, the Full Commission modifies in part and affirms in part the Deputy Commissioners holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on 19 March 1999 and in a Pre-Trial Agreement as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. John Deere Insurance Company was the carrier on risk.
4. A Form 22 was submitted from which an average weekly wage may be determined.
5. Plaintiffs medical records were stipulated into evidence as Stipulated Exhibit 1.
6. Plaintiff last worked for defendant-employer on 18 March 1998.
7. The issues before the undersigned are: (i) whether plaintiff has contracted an occupational disease which arose out of and in the scope of her employment with defendant-employer; and, (ii) if so, what compensation, if any, is due plaintiff?
8. Before the Full Commission, the parties orally stipulated to the fact that plaintiffs average weekly wage was $634.13 and that her compensation rate was $422.75.
 *********** EVIDENTIARY RULING
The objections raised in the deposition of Kathryn A. Caulfield, M.D., are OVERRULED.
 ***********
Based upon the entire evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner on 19 March 1999, plaintiff was forty-four (44) years old and had a high school education. Plaintiff has attended one (1) year at Gaston Community College.
2. Plaintiff began working for defendant-employer on 2 February 1998. Prior to this time, plaintiff had not been employed for fourteen (14) months. Plaintiff had previously been employed by Sunbeam Corporation for eight (8) years as a supervisor, machine operator, customer service representative and materials handler.
3. When plaintiff was first employed by defendant-employer, her duties rotated between assembling weed eaters and assembling parts.
4. Plaintiff had no problems with her arms or wrists prior to her work with defendant-employer.
5. Plaintiffs job was a production job with defendant-employer. Plaintiff was required to wind spools at a certain level per minute. Plaintiff also covered other jobs while employed by defendant-employer.
6. Plaintiff began to encounter symptoms during her third week of work for defendant-employer. She began to have numbness and tingling at night and these problems would awaken her from sleep. Plaintiff had difficulty being able to straighten her hand in the morning.
7. Plaintiffs symptoms became worse and she presented herself to Dr. David R. Rinehart. Dr. Rinehart is plaintiffs family physician and saw plaintiff on two (2) occasions during which he diagnosed her problem as carpal tunnel syndrome with the right hand being worse than the left.
8. Dr. Rinehart referred plaintiff to Dr. Kathryn A. Caulfield, who examined plaintiff on 13 March 1998 and diagnosed her with carpal tunnel syndrome in her right hand. Dr. Caulfield has indicated that plaintiffs problems are related to her employment with defendant-employer. Dr. Caulfield recommended plaintiff be placed on a non-repetitive motion job and prescribed medication.
9. Plaintiff was placed on repetitive motion jobs and her condition deteriorated. Dr. Caulfield removed plaintiff from work on 6 April 1998.
10. Plaintiff had not returned to work by May 1998. Dr. Caulfield indicated plaintiff was able to return to work in July.
11. Plaintiff was terminated by defendant-employer in July 1998. Plaintiff has not been back to work for defendant-employer or any other employer since leaving her employment.
12. Plaintiff last saw Dr. Caulfield in January 1999 when she indicated she had increased symptoms. Dr. Caulfield has recommended plaintiff have carpal tunnel release. Plaintiff has been unable to have surgery to this point.
13. Plaintiffs employment with defendant-employer placed her at an increased risk of contracting or aggravating this condition as compared to other members of the general public not so employed.
14. As a result of plaintiffs repetitive use of her hands while working for defendant-employer, plaintiff developed carpal tunnel syndrome.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiffs average weekly wage was $634.13 and that her compensation rate was $422.75. G.S. 97-2(5).
2. Plaintiffs employment with defendant-employer caused or significantly contributed to the development of her carpal tunnel syndrome. G.S. 97-53(13). Furthermore, plaintiffs employment with defendant-employer exposed her to an increased risk of developing carpal tunnel syndrome as compared to members of the general public not so employed. Id.
3. As result of her compensable occupational disease, plaintiff is entitled to have defendants pay ongoing total disability compensation at the rate of $422.75 per week for the period of 19 March 1998 through the present and continuing until such time as she returns to work or until further order of this Commission. G.S. 97-29.
4. As result of her compensable occupational disease, plaintiff is entitled to have defendants pay for all related medical expenses incurred. G.S. 97-25; G.S. 97-25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission modifies in part and affirms in part the Deputy Commissioners holding and enters the following:
 AWARD
1. For her compensable contraction of an occupational disease, defendant shall pay temporary total disability compensation at a rate of $422.75 per week from 19 March 1998 through the present and continuing until such time as she returns to work or until further order of this Commission. Compensation which has accrued to date, shall be paid in a lump sum subject to an attorneys fee in Paragraph 3.
2. Defendant shall pay all medical expenses incurred by plaintiff as a result of her compensable contraction of an occupational disease and all further expenses which would tend to give relief, lessen plaintiffs pain or reduce plaintiffs period of disability.
3. A reasonable attorneys fee of twenty-five (25%) percent of compensation due plaintiff under Paragraph 1 of this AWARD is approved for plaintiffs counsel and shall be paid as follows: twenty-five (25%) percent of the sum due plaintiff under Paragraph 1 of this AWARD shall be deducted from that sum and paid directly to plaintiffs counsel. In regards to future compensation, plaintiffs counsel shall receive every fourth check.
4. Defendants shall pay the costs.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER